618 So.2d 425 (1993)
Matthew REY, Plaintiff-Appellee,
v.
Wendy GUIDRY, Dixie Lloyd's and Allstate Insurance Co., Defendant-Appellant.
No. 93-CA-52.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 1993.
Writ Granted June 25, 1993.
*426 Jacqueline A. Campbell, Thomas E. Campbell, Metairie, for plaintiff-appellee.
David S. Fos, Kenner, for defendant-appellee & defendant-appellant.
Jeffrey P. Lozes, New Orleans, for defendant-appellee.
Before BOWES, GAUDIN and DUFRESNE, JJ.
DUFRESNE, Judge.
As a result of an automobile accident on August 1, 1989, Matthew Rey filed this tort lawsuit against Wendy Guidry, her liability insurer, Dixie Lloyds Insurance Company and Allstate Insurance Company, Rey's uninsured motorist carrier. Subsequently, the lawsuit was amended naming the Louisiana Insurance Guaranty Association (LIGA) in lieu of Dixie Lloyds which was liquidated, December 20, 1990. Tort liability is not at issue. The sole issue before us is whether LIGA, in lieu of Dixie Lloyds, would be primary or whether Rey's UM carrier, Allstate, would have primary coverage.
On May 20, 1992, the trial court granted a partial summary judgment in favor of Allstate, adjudging LIGA's coverage to be primary.
On October 5, 1992, after the parties stipulated as to the amount of damages, the trial court ruled in favor of Rey and against LIGA in the sum of $2,300.00.
From this judgment LIGA has appealed, arguing that LSA-R.S. 22:1386 required any claimant to exhaust his UM motorist coverage before making a claim against LIGA.
The focus of this appeal is the application of Louisiana Revised Statute 22:1386, as amended.
In 1990, LSA-R.S. 22:1386 read as follows:
"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include, but shall not be limited to, liability coverage, uninsured or underinsured motorist liability coverage or both, hospitalization and other medical expense coverage. Any amount payable by such other insurance shall act as a dollar for dollar credit against any liability of the association under this part."
By amendment in 1992, the Statute reads as follows:
Section 2. R.S. 22:1386(A) and (C) are hereby amended and reenacted and R.S. 22:1386(D) is hereby enacted to read as follows:
§ 1386. Nonduplication of recovery
A. Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, *427 and other medical expense coverage. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant.
. . . . .
C. Any recovery under this Part by any claimant not a resident of the state of Louisiana at the time such claim arose, shall not exceed the lesser of the recovery allowed under this Part or that payable by the insurance guaranty association or its equivalent in the claimant's state of residence. As to the association, any amount payable by the other guaranty association or its equivalent shall act as a credit against the damages of the claimant, and the association shall not be liable for that portion of the damages of the claimant.
D. The association shall have no duty to provide a separate defense at its cost to an insured of an insolvent insurer as to any issue arising out of the coverage of this Section.
Section 3. This Act shall apply to all covered claims, as defined in R.S. 22:1379, pending on or arising on or after the effective date of this Act. (Emphasis added)
Section 4. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana. If vetoed by the governor and subsequently approved by the legislature, this Act shall become effective on the day following such approval.
In this case, R.S. 22:1386, as amended, does not diminish Rey's right to recover, merely establishes a new procedure for his recovery. The amended statute creates procedural rights and affords curative measures as expressed by our Legislature. In light of the jurisprudence interpreting the earlier version of the Statute, the amendments to R.S. 22:1386 are procedural and interpretive. Hickerson v. Protective National Insurance Company, 383 So.2d 377 (La.1980). Interpretive legislation does not create a new rule but simply establishes legislative intent as to the meaning of the statute from its inception. Ardoin v. Hartford Accident and Indemnity Company, 360 So.2d 1331 (La.1978).
Under the present circumstances, any right Rey may have had against LIGA on the date of the accident was conditional, contingent that Dixie Lloyds be liquidated before a claim against LIGA would be viable. In Rico v. Vangundy, 461 So.2d 458 (La.App. 5th Cir.1984) we stated that a right is vested when:
... "the right to enjoyment, present, or perspective, has become property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of any contingency, and a mere expectancy of future benefit or contingent interest in property ... does not constitute a vested right."
The time for vesting of rights is the date of insolvency of Dixie Lloyds, December 20, 1990. As of this date, the statutory scheme defining Rey's rights to proceed against his UM insurer and LIGA's obligation to pay a claim was in effect.
If LIGA is held liable for claims arising before its existence, because liability is determined as of the date of an insurer's liquidation, it should also hold, when the legislature amends LIGA's potential liability; we should use the date of liquidation to determine liability. LIGA v. Guglielmo, 276 So.2d 720 (La.App. 1st Cir.1973).
We do not find Rey's vested rights impaired. In order to fall within the ambit of constitutional protection and the prohibition against divestiture of vested rights, a law must create new obligations, impose new duties, or attach new disability to a contract in existence when the law becomes effective. We find no impediments in this case.
Furthermore, the State, acting through our legislature has exercised its *428 protective powers. The 1992 amendment to R.S. 22:1386, was designed to produce a legitimate end, and measures taken were reasonable and appropriate to protect the citizenry of this State from economic harm and injury. Requiring claimants to exhaust their remedies through claims against their UM motorist insurer before asserting them against LIGA is a legitimate goal which does not infringe upon constitutional rights or protection. LIGA was statutorily created, and embodied by sovereign authority of our State to limit economic exposure when it is necessary to protect the security of our citizenry.
We find that Rey's claim was still pending, thus under the provisions of R.S. 22:1386, as amended by Act 237 of 1992, LIGA's responsibility is subordinate to Allstate's UM coverage. Accordingly, we disagree with the trial court and reverse. At the time the trial court ruled, it should have considered the retroactive application of R.S. 22:1386. We find the adjudication vis-a-vis Allstate was not final until October 5, 1992, therefore did not relieve Allstate of its primary responsibility for Rey's damages. The claim in this case was a "pending claim" within the purview of Section 3 of Act 237 of 1992, amending R.S. 22:1386, and because the Legislature intended the statute to be retroactive Allstate shall be primary.
Accordingly, for the reasons set forth above, we reverse the trial court's judgment against LIGA, and hold the UM insurer, Allstate responsible for Rey's damages.
REVERSED AND RENDERED.
BOWES, Judge, concurring.
I concur with the result reached by the majority but not with all their reasoning.
I am aware that there is a conflict in the circuits with regard to the application of LSA-R.S. 22:1386 as amended.
In Hickerson v. Protective National Insurance Company of Omaha, 383 So.2d 377 (La.1980), our Supreme Court held that LSA-R.S. 22:1386 was intended to apply to ordinary insurance only, not to uninsured motorist coverage. However, this case was legislatively overruled by the amendment to that statute in 1990 which specifically listed UM coverage in the statute as priming that of an insolvent insurer. The statute was amended again in 1992 to state that it was applicable to all cases pending on or arising after the effective date of the statute which was June 10, 1992.
The Fourth Circuit in Dangerfield v. Soto, 599 So.2d 1092 (La.App. 4 Cir.1991) determined that the 1990 amendment to the statute which made LIGA subordinate to any available UM coverage, must be applied prospectively only. In that case, the plaintiffs' claims against the insolvent insurer arose before the date of the amendment even though the insurer did not become insolvent until after the effective date of the amendment. In accord with Dangerfield, supra, is Segura v. Frank, et al., Louisiana Insurance Guaranty Association v. American Manufacturers Mutual Insurance Company, 615 So.2d 516 (La.App. 3 Cir.1993).
However, in Hebert v. Liner, 620 So.2d 294 (1993), the First Circuit determined that the law existing at the time the insurer becomes insolvent must govern the obligation of LIGA, not (as in the preceding cases) the law existing as of the date of the accident.
I believe that the views expressed in Hebert have better reasoning behind them than those views taken in Dangerfield and Frank, supra. The law, as amended by the legislature in 1990 and 1992, makes it clear to me that LIGA is intended to be a last resort for an injured motorist, and that the Association should be liable only after all other available policies have been exhausted. In my opinion, it is obvious that the legislature attempted to amend LSA-R.S. 22:1386 to reflect this, and to me, holding otherwise is to circumvent the legislative intent for the application of the statute.
For these reasons I agree that the judgment should be reversed, but that we should hold that the law existing as of the date the insurer became insolvent is the *429 applicable law, and we should establish this view as the policy of this Court.