JjSAUNDERS, Judge.
This is an appeal by defendant-appellant, Louisiana Insurance Guaranty Association (hereinafter LIGA), from the trial court’s ruling which found that LIGA was liable for claims made against Certified Lloyds Plan’s (hereinafter CERTIFIED LLOYDS) policy owners before the date that CERTIFIED LLOYDS became insolvent. Pursuant to La.R.S. 22:1382 et seq., LIGA took over responsibility for the insurance policies issued by CERTIFIED LLOYDS when it became insolvent.
*270 LIGA contends that the 1990 and 1992 amendments to La.R.S. 22:1386 apply to the plaintiffs’ claim because these amendments were in effect at the time that CERTIFIED LLOYDS became insolvent, thus, when LIGA’s legal obligations to CERTIFIED LLOYDS’ policy owners arose. When the amendments are applied, the plaintiffs must first proceed against their own uninsured motorist (hereinafter UM) policy, i.e. ILLINOIS NATIONAL INSURANCE COMPANY (hereinafter ILLINOIS INSURANCE), and exhaust its coverage before they can recover from LIGA.
For the reasons which follow, we reverse the trial court’s ruling.

jzFACTS

On November 6, 1989, plaintiff, Hester Griffy, was injured in an automobile accident when the tortfeasor, Tony Aaron, rear ended the car she was driving. The accident occurred at the intersection of Highway 385 and Manuel Road in Calcasieu Parish. Hester Griffy and her husband, James Griffy, filed suit on July 3, 1990, against Aaron and his automobile insurer, CERTIFIED LLOYDS, and their own UM policy issuer, ILLINOIS INSURANCE.
The trial was held on October 24, 1991. The trial court found Aaron solely liable for the damages sustained by the Griffys and rendered judgment in favor of Hester Griffy for the sum of $8,066.08 for personal injury, medical expenses, and loss of wages and in favor of James Griffy in the sum of $2,000.00 for loss of consortium. In addition, the court awarded $316.84 to the Griffys for property damage.
On May 4, 1992, before the final judgment was signed by the trial judge, CERTIFIED LLOYDS was declared insolvent. On May 22, 1992, the Griffys substituted LIGA as defendant in place of CERTIFIED LLOYDS pursuant to La.R.S. 22:1382, et. seq. and filed a Rule to Show Cause why judgment should not be rendered against LIGA instead of CERTIFIED LLOYDS.
At the hearing on the Rule to Show Cause, LIGA contended that pursuant to La.R.S. 22:1386, as amended in 1990 and 1992, it was entitled to a determination that the Griffys must first exhaust all other insurance coverage available to them, including but not limited to their UM policy issued by ILLINOIS INSURANCE, before they were entitled to recover from LIGA. The trial court disagreed with LIGA’s interpretation and application of La.R.S. 22:1386.
The trial court signed the final judgment on March 5, 1993. The amounts of the damages were divided between ILLINOIS INSURANCE and LIGA after the trial court took into consideration the statutory limitation afforded LIGA under 22:1379, the $1,000.00 previously paid to Hester Griffy by ILLINOIS INSURANCE, and the policy limits of the tortfeasor’s policy. In the end, ILLINOIS INSURANCE was only responsible for a $166.08 of the final judgment, which represented the UM portion or the portion of the judgment rendered against the tortfeasor that was not covered by his own policy through LIGA.
In rendering its judgment, the trial court found that the 1990 and 1992 amendments to La.R.S. 22:1386 did not apply to the Griffys’ claim. The trial court reasoned:
I «“Illinois National here had a vested right to the status of LIGA in figuring its premium rates that it charged the Griffys for their uninsured motorists coverage. And the affect [sic] of the 1386[1] change was to change what risk that the carrier undertook when they wrote the policy prior to 1990. So, it strikes me that the vested right in question here becomes the insurance carrier’s right as to the risks that it exposed itself to for the premium that it charged; and it does not seem appropriate or reasonable to say that the State can compare[2] that substantive right by in *271 creasing the UM carrier’s exposure after it no longer has the opportunity to charge a premium for the increased risk; and so, for those reasons, I conclude that a proper application here is to conclude that the changes made in 1990 and 1992 cannot impair or impact on a policy "written — of UM coverage written prior to the effective date of those statutes. And I rule that here the first money to be paid will be paid by LIGA.”
Essentially, the trial court recognized that application of the 1990 and 1992 amendments would have an effect on ILLINOIS INSURANCE’S contractual obligations that it negotiated before the enactment of the amendments. Because the amendments changed or altered the terms of those obligations, the trial court ruled that the amendments were substantive and the statute, as amended in 1990 and 1992, could not legally be applied retroactively to ILLINOIS INSURANCE.

I. Issues Presented

Whether the trial court erred in ruling that the 1990 amendment to La.R.S. 22:1386 applies to claims made against an insolvent insurer, CERTIFIED LLOYDS, where the claim arose from an accident that occurred prior to the effective date of the amendment.
II. Law and Argument — Issue I
LIGA contends that its responsibilities to owners of insurance policies issued by companies that later become insolvent are limited and governed by the law in effect on the date of the insurance company’s insolvency. In this case, CERTIFIED LLOYDS insured Mr. Aaron on February 1, 1989, and became insolvent on May 4, 1992. The 1990 amendment became effective September 7, 1990, and therefore, was in effect almost two years before CERTIFIED LLOYDS became insolvent. Consequently, LIGA contends that its obligations to cover claims against CERTIFIED LLOYDS did not arise until May 4, 1992. LIGA argues that La.R.S. 22:1386, as amended, should apply because that was the law in effect at the time that its legislatively defined obligations arose, i.e. May 4, 1992. If LIGA’s position is correct, La.R.S. 22:1386, as amended in 1990 and 1992, applies and the Griffys’ UM insurer, ILLINOIS INSURANCE, would be Lprimarily liable for Griffys’ claim, i.e. the Griffys would have to exhaust their UM coverage before LIGA could be held liable.[3]
The Louisiana Supreme Court granted writs and consolidated Segura v. Frank, 93-C-1271 (La. 1/14/94), 630 So.2d 714, and Rey v. Guidry, 93-C-1271 (La. 1/14/94), 630 So.2d 714, to settle the problems and differences among the Louisiana courts of appeal associated with the application of La.R.S. 22:1386 and its 1990 and 1992 amendments. As part of its legal analysis to determine whether the 1990 and 1992 amendments to La.R.S. 22:1386 applied, the court applied each amendment and analyzed their effects on both plaintiffs and their UM insurers. It found that previous opinions by Louisiana appellate courts[4] failed to take into account the amendments’ effects on the existing rights and obligations of the UM insurer. Segura, supra at p. 11, 630 So.2d at pp. 722- *272 723. The Segura court ruled that a UM insurers’ rights and obligations arise not on the date of an insurance company’s insolvency, nor on the date of the accident, but on the date the UM policy is issued.” Segura, supra. The court went on to state:
“Where the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute. ”
Segura, supra at p. 11, 630 So.2d at pp. 722-723; citing Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983). At the time that Mr. Aaron contracted with CERTIFIED LLOYDS for his policy, neither the 1990 nor the 1992 amendment to La.R.S. 22:1386 were not in effect.
The plaintiffs in the Segura case were involved in accidents that occurred before the '1990 or the 1992 amendment to La.R.S. 22:1386 took effect. Similarly, in that case, the tortfeasors’ insurance companies became insolvent after the 1990 amendment became effective. The Louisiana Supreme Court held that when applied, the 1990 amendment had a retroactive effect on the UM insurers’ obligations under policies issued prior to the amendment’s effective date. Segura, supra at 11-12, 630 So.2d at 722-723. | s(emphasis added). Even though the act giving rise to the obligation, i.e. the insolvency of the plaintiffs’ UM insurers, occurred after the effective date of the 1990 amendment, the Louisiana Supreme Court found that application of the 1990 amendment would in effect be retroactive as to UM insurers’ contracting rights by altering their obligations on policies they had negotiated and issued before the amendment became effective. See, Segura, supra.
The Segura court next addressed whether Louisiana courts could legally apply the 1990 amendment knowing of its retroactive effect on UM insurers. In making that determination, the Segura court addressed whether the 1990 amendment was procedural, substantive, or interpretive. From the standpoint of the plaintiff suing an insolvent insurer, the court held that the 1990 amendment altered a plaintiffs order of recovery from defendants without disturbing their right to recover and was only procedural; therefore, it could legally be applied retroactively. Segura, supra at p. 13, 630 So.2d at p. 723. But, from the standpoint of UM insurers, that court found the 1990 amendment substantive in that it established new rules, rights, and duties or changed existing ones and therefore, it could only have prospective effect. Segura, supra at p. 12-14, 630 So.2d at pp. 723-725. That court also ruled that the 1990 amendment was not merely interpretive of the original statute because it changed settled law; “[w]hile there is a category of legislation labeled ‘interpretive,’ legislation that changes settled law falls outside of that category.” Segura, supra at p. 14, 630 So.2d at pp. 724-725.
First, the Segura court did not find the amendment interpretive. Secondly, because the application of the 1990 amendment only affected a plaintiffs order of recovery, the Segura court found it was only procedural, and observed no legal problems with its application and retroactive effect on plaintiffs. Lastly, the Segura court ruled that when applied to UM insurers, it was substantive because it changed the duties and responsibilities of UM insurers by increasing their obligations on policies issued before the enactment of the 1990 amendment. Segura, supra at p. 12, 630 So.2d at p. 723. In addressing the legality of applying a substantive law retroactively, that court stated that a substantive law will only apply prospectively unless the legislature expresses its intent that it be applied retroactively. See, supra at p. 12 and 14, 630 So.2d at p. 723 and 725; citing La.Civ.Code art. 6 and Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992). The Louisiana Supreme Court noted that “[i]n act 130 of 1990[5], the legislature expressed no such intent.” Segura, supra at p. 12, 630 So.2d at p. 723. Consequently, it held that the 1990 amendment did | Bnot apply retroactively to UM insurers. For the same reasons, we must hold the 1990 amendment does not apply to the Griffys’ claim.
III. Law and Argument — Issue II
Whether the trial court erred in ruling that the 1992 amendment to La.R.S. 22:1386 applies to claims made against an insolvent insurer where the claim arose from an acci *273 dent that occurred prior to the effective date of the amendment.
With passage of Act 287 of 1992[6], the Louisiana Legislature amended La.R.S. 22:1386 to include a retroactivity provision. That 1992 amendment was enacted in an attempt to legislatively settle the issue of whether La.R.S. 22:1386 applied retroactively. Act 237 of 1992 added section 3 to the statute that made its general provisions of the statute applicable to all claims “pending on or arising on or after its effective date.” The Segura court found that like the 1990 amendment, the 1992 amendment changed settled law relative to the UM insurers’ substantive rights and significantly altered their respective rights and obligations. Segura, supra. Thus, that court held that the 1992 amendment was substantive for the same reasons it found the 1990 amendment substantive.
Finding that the 1992 was substantive, the Segura court next addressed the legality of applying a substantive law retroactively. As discussed earlier in this opinion, a substantive law will only apply prospectively unless the legislature expresses its intent that it be applied retroactively. See, supra at p. 12 and 14, 630 So.2d at p. 723 and 725; citing La.Civ.Code art. .6 and Cole, supra. Unlike the 1990 amendment, the legislature made its intention known that the 1992 amendment applied both prospectively and retroactively as to pending claims, notwithstanding the date of the accident or the insolvency date of the insurance company. See, Segura, supra at p. 16, 630 So.2d at p. 726. That court noted, however, “even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights.” Segura, supra at p. 9, 630 So.2d at p. 721. “The Louisiana Legislature’s power to enact retroactive laws is limited by the due process and contract clauses of the United States and Louisiana Constitutions.” Segura, supra p. 18-19, 630 So.2d at p. 728 (citations omitted).
Under the terms of the amendment and with regard to the constitutional issues, the court observed two requisites that must be met for a Louisiana court to legally apply the 1992 amendment: “first, each claim must have been ‘pending’ on June 10, | ?1992, the effective date of Act 237 of 1992; second, retroactive application of the amendment must not violate the federal and state constitutional prohibitions against impairment of contractual obligations or disturbance of vested rights.” Segura, supra p. 16-17, 630 So.2d at p. 726-727 (citations omitted).
As to the first requisite, the Louisiana Supreme Court, after an exhaustive analysis of Louisiana law, held that:
“[A] claim is pending as long as it is subject to judicial scrutiny. Even though a lower court has adjudicated a claim and rendered judgment, the claim continues to be pending until appeal of that judgment has been exhausted. Until then, something further remains to fix the plaintiffs right to enforce the claim as well as the defendant’s obligation to pay it. In other words, a claim ‘pending appeal,’ as that phrase is commonly understood in a legal context, is a pending claim.”
Segura, supra at p. 19, 630 So.2d at p. 727. Because the Griffys’ claim is on appeal and subject to the judicial scrutiny of this court, we hold that the Griffys’ claim is pending and the first requisite set forth by the Segura court is met.
In addressing the second requisite, the Segura court noted that the due process clause and contract clauses of the United States and Louisiana Constitution were virtually identical and substantially equivalent. Segura, supra at p. 20, 630 So.2d at p. 728. That court noted, however, that “[although the language of each clause is facially absolute, its prohibition must be accommodated to the inherent police power of the state to safeguard the vital interests of its people.” Segura, supra at p. 20, 630 So.2d at p. 728; citing Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983), Home Bldg. & Loan Ass’n. v. Blaisdell, 290 U.S. 398, 434, 54 S.Ct. 231, 239, 78 L.Ed. 413 (1934); Board of Comm’rs v. Dept. of Natu *274 ral Resources, 496 So.2d 281, 292 (La.1986). Thus, the general prohibition against interference with an individual’s vested right must be weighed against the power of a state government to safeguard its citizens by the enactment of laws and regulations.
The constitutional test applicable to determine whether a substantive law can be applied retroactively is as follows: (1) the court must determine whether the state law would, in fact, impair a contractual relationship; (2) if an impairment is found, the court must determine whether the impairment is of constitutional dimension; (3) if the state regulation constitutes a substantial impairment, the court must determine whether a significant and legitimate public purpose justifies the regulation; and (4) if a significant and legitimate public purpose exists, the court must determine whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying | sthe legislation’s adoption. Segura, supra p. 21, 630 So.2d at p. 729; (citing Energy Reserves, 459 U.S. at 410-13, 103 S.Ct. at 704-05; Board of Comnn’rs, 496 So.2d at 292-93).
In Segura, the Louisiana Supreme Court ruled that when applied,' the 1992 amendment, like the 1990 amendment, increased the contractual obligations of the UM insurers. The application of the 1992 amendment in this case would have a retroactive effect on ILLINOIS INSURANCE’S contracting relationship with the Griffys. If the 1992 amendment is applied, ILLINOIS INSURANCE would be primarily liable for the Griffys’ claim. At the time that ILLINOIS INSURANCE issued its policy to the Griffys, i.e. before the passage of the 1992 (and 1990) amendment, ILLINOIS INSURANCE’S liability was limited to claims in excess of the tortfeasor’s liability insurance even in the event of the insolvency of the tortfeasor’s insurer. See, La.R.S. 22:1386 (1990) and Hickerson v. Protective National Insurance Co., 383 So.2d 377 (La.1980). Therefore, we find that the 1992 amendment impairs ILLINOIS INSURANCE’S contractual relationship with the Griffys and the first part of the constitutional test is met.
In Segura, the Louisiana Supreme Court stated: “It is a fundamental principle that laws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written therein.” Segura at p. 23, 630 So.2d at p. 730. The Segura court found that a UM insurer did not obligate itself to provide its policy owners with coverage against the risk of insolvency of a tortfeasor’s liability insurer. Segura at p. 23, 630 So.2d at p. 730. That court reasoned that prior to 1990 when a UM insurer entered into an insurance contract with its policy owner, the law provided and UM insurers reasonably expected that LIGA would cover claims against insolvent insurers even where UM coverage was otherwise available. Segura, at p. 23, 630 So.2d at p. 730. In Segura, the court found that the retroactive application of the 1992 amendment would frustrate a UM insurer’s contractual expectations by requiring them to assume greater liability on a contract that they negotiated before the amendment took effect. Even though the Segura court found that the state, as a matter of public policy, had traditionally regulated UM insurance and that at the time of contracting the UM insurers should have expected further legislation on the same topic, it went on to say: “On balance, we conclude the impairments in these cases constitute more than minimal alteration of the UM insurer’s contractual obligations and therefore are of a constitutional dimension.” Segura, supra at p. 24, 630 So.2d at p. 731.
Accordingly, in the case before this court we find that the application of the 1992 amendment would frustrate ILLINOIS INSURANCE’S contractual expectations by requiring them to assume greater liability than they bargained for when they sold the Rpolicy to the Griffys. In addition, as to the second part of the constitutional test, we find this impairment of a constitutional dimension.
After ruling that the impairment on ILLINOIS INSURANCE’S contractual expectations is of a constitutional dimension, this court is now required to address the third part of the constitutional test which is whether the 1992 amendment is justified by a significant and legitimate public purpose. When the Segura court held that the impairment of a UM insurer’s contracting expecta *275 tions to be of a constitutional dimension, the court also noted that “the impairments constitute[d] considerably less than total destruction of the UM insurer’s contractual expectations.” Segura, at p. 25, 630 So.2d at p. 731. “Accordingly,” that court stated, “as we inquire into the public purpose justifying retroactive application of Act 237 of 1992, we emphasize the legislative judgment is entitled to considerable deference.” Segura, supra at p. 25, 630 So.2d at p. 731. In its reasoning that court states:
“By requiring claimants and policyholders to exhaust any available UM coverage before proceeding against LIGA, the Act serves to minimize the unnecessary depletion of LIGA’s funds while at the same time furthering the LIGA Law’s stated purpose of avoiding ‘financial loss to claimants or policyholders because of the insolvency of an insurer.’ Similarly, the legislature’s decision to give Act 237 of 1992 retroactive effect may reasonably be viewed as a measure designed to immediately minimize unnecessary depletion of LIGA’s funds. Clearly, retroactive application of Act 237 of 1992 would constitute a legitimate exercise of the state’s police power for the purpose of protecting the state’s citizens from economic harm.”
Segura, supra at p. 26, 630 So.2d at p. 732 (citation omitted). For those reasons, we also hold that in this case, the third requirement of the constitutional test is met.
Finally, having held that the requisite public purpose of the amendment exists, this court must address whether the adjustment of the rights and responsibilities of the contracting parties, ILLINOIS INSURANCE and the Griffys, is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation’s adoption. “Unless the state itself is a contracting party, as is customary in reviewing economic and social regulation, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure. However, even when the law addresses a legitimate end, it may not be used to burden a politically defenseless or easy target group with the imposition of costs without fair attention to its interests.” Segura, supra at p. 26, 630 So.2d at p. 732. Because the contractual relationship in this ease, as in Segura, is between private parties, ILLINOIS INSURANCE and the Griffys, we hold that the legislature’s judgment is entitled to proper deference. Segura, supra at p. 732.
hnMore specifically in deciding whether the 1992 amendment was necessary and reasonable, the court found:
“that in choosing retroactive application of Act 237 of 1992 as a means of immediately minimizing unnecessary depletion of LIGA’s funds, the legislature simply shifted the risk of insurer insolvencies from LIGA onto UM insurers which, but for LIGA, would have borne the risk anyway.”
Segura, supra at p. 26, 630 So.2d at p. 732.
In addition, the Segura court observed that the stated purpose of avoiding financial loss to claimants or policyholders because of the insolvency of an insurer would be frustrated without the application of the 1992 amendment. Segura, supra at p. 27, 630 So.2d at p. 733. “By ultimately shifting the risk of insurer insolvency to unprotected policyholders of those insurers,” that court held, “retroactive application of Act 237 of 1992 would be unreasonable and inappropriate to achieve the legitimate end of minimizing unnecessary depletion of LIGA’s funds.” Segura, supra at p. 27, 630 So.2d at p. 733. Thus, the Segura court held that the adjustment of the UM insurers’ rights and responsibilities caused by retroactive application of the 1992 amendment is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation’s , adoption. Segura, supra at p. 28, 630 So.2d at p. 733. Accordingly, that court held that retroactive application of the 1992 amendment would violate neither the federal nor the state constitutional prohibitions against impairment of contractual obligations. Segura, supra at p. 28, 630 So.2d at p. 733.
For the foregoing reasons, in the case before this court, we also find that the last requisite of the constitutional test is met and hold that the 1992 amendment should be applied to the Griffys’ claim.

Conclusion

For the foregoing reasons, the judgment of the trial court is reversed. Judgment is *276 rendered against ILLINOIS INSURANCE in favor of Hester Griffy in the amount of $316.84 for property damages and $8,066.08 minus the $1,000.00 already paid to Hester Griffy or $7,066.08 for personal injury together with legal interest from date of judicial demand until paid. In addition, this court renders judgment against ILLINOIS INSURANCE in favor of James Griffy in the amount of $2,000.00 for loss of consortium together with legal interest from date of judicial demand until paid. All costs of these proceedings are to be paid by defendant-appellee, ILLINOIS INSURANCE.
REVERSED and RENDERED.

. The trial court is making reference to the changes made to La.R.S. 22:1386 by the Louisiana legislature in 1990 and 1992.

. The word "compare” appears to be a typographical or stenographical error because it makes little sense in the context of the sentence. The court probably used the word "impair" as it did in the second to last sentence of its reasons for judgment.

. Prior to the 1990 amendment of La.R.S. 22:1386, a plaintiff could proceed directly against LIGA and he was not required to exhaust his uninsured motorist coverage before recovering against LIGA. See, Hickerson v. Protective National Insurance Co., 383 So.2d 377, 379 (1980).

. Segura v. Frank, 615 So.2d 516 (La.App. 3d Cir.1993), writ granted, 620 So.2d 822 (La.1993), holding that La.R.S. 22:1386, as amended in 1990, which expressly included uninsured motorist policies with those required to be exhausted before claim could be asserted against LIGA, did not apply to claim arising out of accident which occurred before date of amendment even though insurer became insolvent after date of amendment; amendment was substantive and could, thus, apply only prospectively. As to the 1992 amendment, the court found that the claim was no longer "pending” and therefore the 1992 amendment did not apply. Rey v. Guidry, 618 So.2d 425 (La.App. 5th Cir.1993), writ granted, 620 So.2d 822 (La.1993), holding that the 1990 amendment requiring plaintiff to exhaust rights under other policies was procedural and interpretive and did not create a new rule but simply established legislative intent as to the meaning of the statute from its inception, thus, it could apply retroactively. The court found that the plaintiffs claim was still pending and the 1992 amendment applied. That court found the legislature made its intent known that the amendment applied retroactively and that its application did not violate any of the defendant's constitutional rights.

. Act 130 of 1990 is the specific legislative act that amended La.R.S. 22:1386. It is also referred to in this opinion as the "1990 amendment.”

. Act 237 of 1992 is the specific legislative act that amended La.R.S. 22:1386. It is also referred to in this opinion as the "1992 amendment.”