11 JOHN C. BOUTALL, Judge Pro Tem.
Louisiana Insurance Guaranty Association (“LIGA”) appeals a judgment of the district court granting the motion of Allstate Insurance Company (“Allstate”) to enforce a settlement agreement. For the following reasons we reverse.

FACTS

On September 28, 1989, plaintiff, Joyce Mancuso (“Mancuso”), was involved in an automobile accident with a vehicle driven by defendant, Carolyn G. Seigel (“Seigel”). Suit was filed in 1990 against Seigel and her liability insurer, Automotive Casualty Insurance Company (“Automotive”). Rln 1991, plaintiff amended her petition naming as an additional defendant her uninsured/underin-sured motorist carrier Allstate; Allstate answered and filed a cross claim against Seigel and Automotive.
On or about November 6, 1992, on the eve of the trial scheduled in this matter, Mancuso and ah defendants entered into an agreement to settle ah claims. According to the attorney, correspondence filed into the record, Automotive agreed to pay $8,000.00 to plaintiff, plus $2,500.00 for property damage. By the same agreement, Allstate agreed to pay $500.00 to the Mancusos under its UM policy. Allstate sent its check for $500.00 to the attorney for plaintiffs; shortly thereafter, on November 24,1992, Automotive also sent two checks in the agreed upon amounts, along with a receipt, a release, and a joint motion to dismiss. However, before the settlement was completed, plaintiffs were notified of the *1202 pending liquidation of Automotive and they were instructed not to negotiate the checks. On January 20, 1998, Automotive was placed in liquidation. On June 7, 1993, Allstate amended its cross claim to add LIGA as a party defendant. LIGA answered and, among other things, specifically pleaded Allstate’s uninsured motorist policy and the exhaustion of recovery pursuant to LSA-R.S. 22:1386. Plaintiffs, the Mancusos, did not file any pleadings to add LIGA as a party defendant. On August 19, 1993, Allstate filed a motion to enforce the November, 1992 settlement against LIGA. The motion was heard on September 24,1993 and on October 4, 1993, the court granted Allstate’s motion to enforce the settlement, ordering LIGA to pay the ^Mancusos in accordance with the settlement. It is from this judgment that LIGA has perfected the present appeal.[1]

JUDGMENT AND ASSIGNMENTS OF ERROR

The trial court was requested to hand down written reasons for judgment and did so on February 8, 1994. We quote some of them because we agree in large part with his well-reasoned approach.
The Louisiana jurisprudence has long held that a compromise agreement to avoid litigation is favored by law. A settlement is not invalidated in the absence of bad faith, error or fraud. Adams vs. Adams, 529 So.2d 877 (La.App. 4th Cir.1988). This Court finds that the letter along with the Receipt and Releases evidence the mutual intent of the parties to compromise the litigation.
Pursuant to LSA R.S. 22:1376 the purpose of the formation of LIGA was ‘to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer ... ’ The statutes must be interpreted to protect claimants and policyholders and to advance their interests rather than the interests of the association. Senac vs. Sandefer, 418 So.2d 543, (La.1982).
LIGA does not suggest, not [sic] is there any evidence, that there exists any fraud or error which would invalidate this compromise. LIGA cannot avoid honoring the compromise merely by claiming it was not a party to the agreement. LIGA was not a Lparty to the insurance contract either, but LIGA is clearly the successor in interest of Automotive Casualty Insurance Company, by virtue of the statutory law requiring it to stand in the shoes of an insolvent insurer. Lastie vs. Warden, 611 So.2d 721 (La.App. 4th Cir.1992). Moreover, LIGA is barred by the res judicata effect of the compromise from raising an issue as to coverage under the policy.
Based upon the above and foregoing this Court does not find sufficient legal justification for LIGA to annul the valid compromise agreement between the parties.
On appeal, LIGA asserts that the trial court erred in ruling that it could be substituted in place of the insolvent insurer in the settlement reached between them; that the court erred in failing to apply La. R.S. 22:1382(A)(4); in failing to apply 22:1386(A) to require that the Allstate Policy be exhausted prior to any payments by LIGA; and that the court erred in applying the rule of Lastie v. Warden, 611 So.2d 721 (La.App. 4 Cir.1992).

ANALYSIS

First, we must note that we agree with the trial judge’s finding that a compromise was effected and there is no showing of fraud or ill practice. We do find that the settlement is clearly excessive, considering all relevant factors because its terms, as they apply to LIGA, require LIGA to pay contrary to the mandate of the statutory law. In this regard, we must point out that while in general, LIGA stands in the place of the insolvent insurer, that the statutory law sets up certain exceptions, both in duty and in 15obligation, *1203 that act to change LIGA’s position from that of simply another litigant. The applicable law to which we refer is as follows:
La. R.S. 22:1382 reads in pertinent part:
A. The association shall:
(l)(a) Be obliged to the extent of the covered claims existing prior to the determination of the insurer’s insolvency, or upon order of the court as provided in R.S. 22:735, or arising after such determination
[[Image here]]
* * * * * *
(4) Investigate claims brought against the association and adjust, compromise, settle, and pay covered claims to the extent of the association’s obligation and deny all other claims. On contradictory motion of the association, a court of proper jurisdiction and venue over the claim shall enter a formal order annulling any unsatisfied preinsolvency settlement, release, or consent judgment entered into by the insolvent insurer in its name or the name of the insured, upon a showing of fraud, ill practice, or where the settlement is clearly excessive, considering all relevant factors, including but not limited to coverage, liability, and quantum issues.
La. R.S. 22:1386(A) states:
Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant.
|,APPLICABILITY of ACTS 1992, NO. 237
Acts 1992, No. 237 (See. 2 of which amends R.S. 22:1386) provides in See. 3: “This Act shall apply to all covered claims, as defined in R.S. 22:1379, pending on or arising on or after the effective date of this Act.” The effective date of Acts 1992, No. 237 is June 10, 1992.
By reference to these statutes, LIGA is obliged to investigate claims brought against the association and is authorized, on contradictory motion of the association, to obtain a formal order of the court annulling any unsatisfied preinsolvency settlement upon the showing that the settlement is clearly excessive, considering all relevant factors. This statutory obligation and authority is vested only in LIGA and does not come into existence under the general laws relative to settlement that may have effect of res judicata amongst the parties.[2]
We believe the application of La. R.S. 22:1386(A) is applicable to this case and is dispositive of the issues before us. That statute requires that where there is in existence, as here, a policy of uninsured or un-derinsured motorists liability coverage, any person having a claim under such a policy must first exhaust his rights under that policy and, in turn, an amount payable by such other insurance shall act as a credit against the damages of the claimant and the association shall not be liable for that portion.
|7 No person is entitled to get a windfall from the operation of LIGA, whose existence is based upon the public policy of regulation of insurance and protection of Louisiana citizens. If this case were to be decided in favor of the insurer, the effect would not only be to credit a windfall for Allstate, because of its obligation to pay first, but it would cause the entire section of law to which we refer to be completely ignored and written out of the LIGA statutory law.
We rely upon the recent case of Segura v. Frank, 93-1271 and 93-1401 (La. 1/14/94), *1204 630 So.2d 714. There our Supreme Court considered the application of the “nonduplication of recovery” provision quoted herein-above, as applied to two accidents which arose prior to the effective date of the amendments recently made. Segura actually determined two cases from the Third and Fifth Circuits,[3] neither of which involved a preliquidation settlement by the insurer. However, the court did define a “pending claim” for purposes of La. R.S. 22:1386 as follows:
... we conclude a claim is pending as long as it is subject to judicial scrutiny. Even though a lower court has adjudicated a claim and rendered judgment, the claim continues to be pending until appeal of that judgment has been exhausted. Until then, something further remains to fix the plaintiff’s right to enforce the claim as well as the defendant’s obligation to pay it. In other words, a claim “pending appeal,” as that phrase is commonly understood in a legal context, is a pending claim.
| sin making this determination, the court cited its decision in Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986). There the court concluded that a suit is pending until a final judgment dismissing it has been filed. Id, at 721. See also Griffey v. Certified Lloyds Plan, 93-782 (La.App. 3d Cir. 3/9/94), 636 So.2d 269, relying on Segura, supra.
In the present ease, the settlement agreement sought to be enforced had not been reduced to judgment, nor had the case been dismissed. In point of fact, the settlement agreement had not been reached until November, 1992, several months after the effective date of the amended statute. Based on this fact, and the reasoning of Segura, supra, we find the claim was clearly “pending” for purposes of La. R.S. 22:1386.
Lastie v. Warden, 611 So.2d 721 (La.App. 4 Cir.1991), relied upon by the trial court, is inapplicable for several reasons. Most significantly, it was decided prior to Segura; further, it is distinguishable on the facts that the insolvent insurer for whom LIGA was substituted was the UM carrier and the only insurer involved in that case;[4] therefore, La. R.S. 22:1386 was not involved in that case. Certainly, it is not clear from the opinion as to whether the compromise in question was confected prior to June 10, 1992. One additional distinction is that unlike the present case, LIGA was substituted via an amended petition in place of the insolvent insurer.
19Lastie emphasized that LIGA could not avoid an otherwise valid compromise agreement merely because it was not an original party, and, with that finding, we agree. As stated hereinabove, LIGA substitutes for the insolvent insurer. Weaver v. Kitchens, 566 So.2d 120 (La.App. 5 Cir.1990). Such a finding is not determinative of the instant ease, in which LIGA is not a party to the plaintiff’s case in chief, having not been substituted by Mancuso as a party defendant. Lastie is not controlling in the present ease.
Following a thorough analysis of the retro-activity of laws in general, the Segura court concluded that claims “pending” (as defined by the Court) as of June 10,1992, require the retroactive application of Act 237 of 1992. The 1992 amendments to La. R.S. 22:1386 apply to all such claims. Segura, supra.
In the case at bar, because the claim was pending as of June 10, 1992, La. R.S. 22:1386 as amended is applicable. The plaintiff must exhaust all uninsured/underinsured motorists insurance prior to recovering any amounts from LIGA.
This being so, the court cannot order enforcement of a compromise to another effect. Under La.C.C. art 7, parties cannot by their juridical acts derogate from laws enacted for the protection of the public interest, and all such acts are absolute nullities. As the Seg-ura 'court found, the retroactive application of the statute is appropriate to the public purpose of minimizing unnecessary depletion of LIGA’s funds. Segura was decided in January, 1994, shortly after the judgment in *1205 this case, and unfortunately was not available to lipthe trial judge. An appellate court is bound to adjudge a ease before it in accordance with the laws existing at the time of its decision. Segura, supra. Therefore we find that the district court was in error in granting plaintiffs motion to enforce the settlement.
For the foregoing reasons, the judgment appealed from is reversed, Allstate’s motion to compel is denied, and the matter remanded to the trial court for further proceedings.
REVERSED AND REMANDED.

. We set out in chronological detail these various events for two reasons: (1) to affirm that LIGA was never made a party defendant by the plaintiffs causing some procedural difficulties in considering Ais case; and (2) Ae dates are important to a determination of a “pending claim” for purposes of La. R.S. 22:1386.

. We call attention to the fact that this matter does not arise on LIGA’s motion as set out in the statutes, but upon a motion to enforce the settlement filed by defendant, Allstate. Plaintiffs do not bring the rule, nor make LIGA a party defendant. Because the disposition of this case is based by us on other grounds, we do not discuss the procedural aspects of the motion.

. Segura v. Frank, 615 So.2d 516 (La.App. 3. Cir. 1993); Rey v. Guidry, 618 So.2d 425 (La.App. 5. Cir.1993).

. The Supreme Court denied writs in Lastie; even post-Segura, it appears that the result in this case would be the same because no other insurers were involved.