SAMUEL, Judge.
Plaintiff filed suit on two contracts allegedly breached by the defendants: (1) a written contract of employment under which defendant, National Remodelers & Rebuilders, Inc., through its officers, Julian and Milton Loeb, refused to account for and pay a percentage of net profits due plaintiff; and (2) an oral agreement with defendants Julian and Milton Loeb, individually, under which plaintiff was to receive a one-third interest in an apartment complex for negotiating its purchase, at a bargain price because it was heavily damaged, and subsequently restoring it. As an alternative to the second claim, plaintiff seeks quantum meruit for services rendered.
The corporate defendant denied any indebtedness and reconvened for $4,976.60 it claimed was due by plaintiff. As to the second claim, the defendants denied the oral agreement and also urged plaintiff could not establish an interest in real estate on a contract not in writing.
The trial court cast the corporate defendant in the sum of $13,145.59, representing unpaid net profits due plaintiff. In addition, he awarded plaintiff $67,855.98 against the individual defendants on the oral contract, representing one-third of the amount by which the apartment complex increased in value by virtue of plaintiff’s repairs and restoration. All defendants have appealed.
*377 The written contract on which plaintiff’s first claim is based was executed May 24, 1965 by plaintiff and Julian Loeb, the latter as president of the defendant corporation. .Plaintiff agreed to fully operate the corporation’s construction and other work and solicit business for which he was to receive a salary of $100 per week plus a percentage of the net profits earned by the corporation. During the first year of operations, ending April 30, 1966, his percentage was to be one-half. The contract provided the annual operating statement of the corporation would serve as the basis for determining the net profits. It further stipulated all profit sharing settlements would be made prior to July 1st of each year.
While plaintiff was so employed he worked as a contractor exclusively for the defendant corporation. In late fall of 1965 he discovered the Wilshire Apartments could be purchased at a bargain price because the complex had been heavily damaged by winds and water of Hurricane Betsy. Plaintiff could not finance the purchase, but he told Julian Loeb of its availability. The original asking price was $160,000. Loeb proposed that plaintiff negotiate the price downward and promised plaintiff a one-third ownership of the apartment complex if he would undertake the extensive repairs and remodeling needed to restore it as a luxury rental building.
In January, 1966, through plaintiff’s efforts, a purchase price of $120,000 was agreed upon and title was taken in the name of Julian Loeb. Loeb promised plaintiff that when the repairs were complete a corporation would be formed and title to the property would be transferred to it. Then plaintiff would receive one-third of the stock in the corporation. The repair and remodeling of the Wilshire Apartments was to be done by National Rebuilders & Remodelers, Inc. and during the restoration plaintiff was to continue drawing his salary as an employee of defendant corporation and participate in the net profits under the written contract. This was to be over and above the one-third interest in the property promised in the oral contract.
Through plaintiff’s efforts the complex was restored and its value greatly enhanced. According to the testimony of an expert realtor, who made an appraisal on May 2, 1969, the fair market value of the property at that time was $387,000.
Although plaintiff fulfilled all obligations under the oral contract, Julian Loeb refused to transfer the one-third ownership promised plaintiff. In addition, Loeb evaded plaintiff’s continued requests for an accounting of the corporation’s net profits so that he could draw the 50% due him. The final date for settlement under the written contract passed and in August, 1966 plaintiff terminated his employment. Despite repeated demands thereafter, Julian Loeb, as president of the corporation, refused to pay the profits due plaintiff.
The foregoing factual résumé is based on the testimony of plaintiff and William Gandolini, an accountant and attorney who performed both bookkeeping and legal services for the defendant corporation while the employment contract was in existence. Both Julian and Milton Loeb testified. However, both were evasive and argumentative and, because we conclude neither testified truthfully, we simply note here they denied plaintiff was due a share of profits under the employment contract and denied the second agreement was entered into or discussed. Obviously the trial court completely discounted their testimony since he awarded plaintiff a judgment on both claims.
We will first consider whether an award to plaintiff of $67,855.98, representing one-third of the increased value of the apartment complex due to plaintiff’s efforts, is proper. The record leaves no doubt that the oral agreement was made. Gandolini was drawn into the discussion *378 and substantiated plaintiff’s account of the agreement. However, our jurisprudence clearly states an obligation of this nature must be written in order to be enforceable. It is incumbent on one who demands either an interest in immovable property or in profits derived from the purchase and/or sale thereof to establish his claim by written evidence; parol is not admissible. LSA-C.C. Art. 2275; Little v. Haik, 246 La. 121, 163 So.2d 558; Hayes v. Muller, 245 La. 356, 158 So.2d 191.
However, we do think plaintiff is entitled to compensation on a quantum meruit basis under the Wilshire contract for the substantial services he performed. It should be pointed out he initially found the bargain, then successfully negotiated the purchase price downward from $160,-000 to $120,000. Once title was transferred to Loeb, plaintiff designed the renovation, supervised the construction, handled all the subcontracts and, when it was completed, advertised and rented apartments. Under Little, plaintiff is entitled to recover under quantum meruit for his considerable efforts in furthering the Wilshire venture. And as the trial court has not considered quantum meruit, this cause must be remanded to permit the introduction of evidence, including such additional competent evidence as any and all of the litigants may desire to offer, to establish the amount to which plaintiff is entitled under that demand.
Turning to plaintiff’s claim for profits under the contract of employment, it should be noted the trial court’s award was based on a profit and loss statement of the defendant corporation prepared by Gandolini. It shows a net profit of $26,-291.09. In preparing this statement, Loeb instructed Gandolini to omit the billings on two substantial contracts performed during plaintiff’s employment. One was the Wil-shire remodeling and the second was repairs to the warehouse of National Roofing Company, a corporation owned and controlled by Julian Loeb. Thus the statement notes the figures must be revised upward to include these jobs. The testimony further establishes the rental of $300 per month paid by the defendant corporation to Loeb’s other company, National Roofing Company, was to be suspended and not carried as an operating expense while the Wilshire job was being performed. Thus, on remand, evidence should be adduced to establish the contract price on both jobs, the expenses in executing them, and the net profit derived therefrom. Because the record conclusively reflects Loeb attempted to pad his operating expenses to reduce what the net profit figure would be, we instruct the lower court to consider only documented evidence on the cost in performing both contracts.
In this connection we note defendants adduced the testimony of another accountant to establish a lower “net profit” for the period of plaintiff’s employment and to establish the amounts defendant corporation urged were due by plaintiff. This accountant testified he worked from figures furnished by Loeb. Since we concluded Loeb’s testimony is unbelievable, we discount both the balance sheet and the profit-and-loss statement based on figures furnished by Loeb. The offset claimed is for $6,500 in alleged advances drawn by plaintiff under a provision in the contract that he could draw $100 per week and deduct the advance from future profits. A second was for an account receivable due by plaintiff for labor and materials furnished in remodeling his home for $1,542. The record is inconclusive as to whether these amounts were due by plaintiff. As all of the pertinent books and records were in defendant’s possession, evidence proving these amounts were due, if the offset claimed was in fact due, was available to that defendant. The testimony of the accountant working from Loeb’s information, by itself, is insufficient to prove the offset.
*379 The burden of proving offsets claimed, an affirmative defense, is upon the party asserting such offsets. Pelican Supply Company v. Clark, La.App., 146 So.2d 253. Here that burden is on the defendant corporation which claims the offset. But even though that defendant failed to offer sufficient evidence to prove the claimed offset at the trial, in view of our decision to remand for other purposes we will afford it an opportunity to prove the offset on remand.
Finally, the evidence discloses that plaintiff turned over to the corporation tools and equipment, valued at $2,500, for which he was supposed to receive stock in defendant corporation. He never received the stock and when his employment terminated he only retained his truck and a few hand tools. On remand, evidence should be adduced to establish the value of the tools retained by the defendant corporation and plaintiff compensated accordingly therefor.
Thus we conclude this matter be remanded to adduce additional evidence by plaintiff and the defendants for the purpose of establishing: (1) the value of plaintiff’s services on a quantum meruit basis on the Wilshire contract; (2) the profits due plaintiff from the Wilshire and the warehouse jobs; (3) the rebate due on the rent included in the operating costs of the July 31 statement (plaintiff is entitled to a judgment on half the rebate since net profits should increase by the amount of the rebate) ; (4) the amount of offset due the defendant corporation, if any; and (5) the value of the tools converted by defendant.
For the reasons assigned, the judgment appealed from is annulled and set aside and this matter is remanded to the trial court for further proceedings consistent with the views herein expressed; costs to this date in both courts to be paid by the defendants-appellees; all future costs to await a final determination.
Annulled, set aside and remanded.