LOBRANO, Judge.
Louisiana Insurance Guaranty Association (LIGA) perfects this appeal presenting the argument that plaintiffs uninsured motorist coverage should be primary to LIGA’s coverage.
On July 28,1989 plaintiff, Mary Lewis, was involved in a vehicular collision with Neil Borne in the City of New Orleans. Borne was insured by Fidelity Fire and Casualty Insurance Company which was declared insolvent subsequent to the filing of this suit by Lewis. LIGA was named a defendant as the statutory guarantor of Fidelity.
Trial took place on July 20,1992. Liability was stipulated. Judgment was rendered in favor of plaintiff on July 30, 1992 in the total sum of $7,212.04.
LIGA perfects this appeal raising two errors. First, it argues that the 1990 and 1992 amendments to La.R.S. 22:1386 are applicable and therefore plaintiff was required to exhaust her UM coverage before proceeding against LIGA. Second, and alternatively, it argues that the award for lost wages was excessive.
In 1989, at the time of the accident, La. R.S. 22:1386 provided, in part, that:
“Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under such policy.”
The jurisprudence in effect in 1989 held that “other insurance” under the above statute did not include UM coverage. Hickerson v. Protective National Ins. Co. of Omaha, 383 So.2d 377 (La.1980).
In 1990, La.R.S. 22:1386 was amended to specifically include UM coverage as “other insurance”. That amendment legislatively overruled the Hickerson decision. However, this court concluded that the amendment was to be applied prospectively and hence the pre-amendment version was applicable to an accident which occurred before the amendment’s effective date. Dangerfield v. Soto, 599 So.2d 1092 (La.App. 4th Cir.1991).
In 1992, R.S. 22:1386 was again amended to provide that “[t]his Act shall apply to all covered claims as defined in R.S. 22:1379, pending on or arising on or after the effective date of this Act.” Acts 1992, No. 237. The effective date of the 1992 amendment was June 10, 1992. LIGA argues that because this case was not tried until July 30, 1992, it was “pending” and therefore plaintiffs UM coverage is primary.
Plaintiff argues that an interpretation of La.R.S. 22:1386 is unnecessary because LIGA failed to prove that she had UM coverage. Alternatively, plaintiff asserts that we should adhere to our holding in Dangerfield and apply R.S. 22:1386 as it existed on the date of the accident.
We find it unnecessary to resolve the legal issue posed by LIGA because the record fails to support a finding that plaintiff had UM coverage.[1] LIGA, in its answer, pleaded the affirmative defense of UM coverage. It bore the burden of proving its existence. The only reference to UM coverage in the entire trial transcript is the following testimony by plaintiff on direct examination:
“Q. Did you look at your policy to see if you had uninsured motorist coverage?
A. Yes, I did.
Q. What did it say?
A. Liability only.
Q. Do you know where your policy is now?
A. I don’t have it.
Q. You destroyed it?
A. Right.”
There was no further inquiry by LIGA’s counsel on cross-examination concerning UM coverage. LIGA argues in its supplemental brief that there was an agreement prior to trial that the case would be *275 held open so that plaintiffs insurance agent could be contacted to obtain a copy of her declarations page. LIGA contends that subsequent to the trial, but prior to judgment, it received a copy of the declaration page of plaintiffs policy which indicates UM coverage. This was forwarded to the trial judge along with a transmittal letter which suggests there was an agreement to hold the case open.
Neither the trial transcript nor the exhibits introduced into evidence indicate there was any agreement between the parties or the court to hold the case open for additional evidence. Although the record does contain a copy of what purports to be a declarations page of plaintiffs insurance that document was never introduced into evidence.
Items physically in the record but not properly introduced and accepted into evidence cannot be considered by this Court. State Department of Highways v. Colby, 321 So.2d 878 (La.App. 1st Cir.1975), writ den. 325 So.2d 278 (La.1976); see also, Blackwell v. Hanover Ins. Co., 551 So.2d 47 (La.App. 1st Cir.1989). The courts of appeal are courts of trial record. That is, for purposes of our review the record consists of the testimony, exhibits and other evidence introduced during trial.[2] In the instant case the only record evidence concerning plaintiffs UM coverage is her denial of same. Thus, LIGA failed to carry its burden of proving UM coverage and therefore it is unnecessary to resolve the legal issue it presents.
In LIGA’s second assignment of error, it argues that the trial judge erred in awarding plaintiff $1,384.62 in lost wages. LIGA suggests that plaintiffs injuries were not so serious as to prevent her from working. LIGA claims that plaintiff chose to stay home and collect sick leave benefits rather than return to work. Her employment was terminated when her sick leave benefits expired. At that point, according to LIGA, plaintiff asked her physician to declare her able to work so that she could collect unemployment benefits.
The award of $1,384.62 appears to reflect an amount equal to six weeks salary which plaintiff had been earning at her job at Travelers Insurance Company. Dr. Daniel Seltzer, an orthopedic surgeon, testified by deposition properly introduced at trial through a joint stipulation of the parties. He stated that he examined plaintiff on August 3,1989, six days after the accident, and concluded that she had sustained multiple soft tissue injuries involving the chest and thoracic spine. He advised her to refrain from working completely for two weeks and then to return for another visit. Although she did not return until five weeks later on September 11, 1989, she still had complaints of pain and Dr. Seltzer’s opinion was that she was still disabled from working on that date. Dr. Seltzer agreed to plaintiffs telephone request to be authorized to return to work on September 20, 1989. However, he specified that he was only authorizing her to perform light duty work. As late as plaintiffs February 23, 1990 visit to Dr. Seltzer, he still felt that she should be restricted to light work duties.
LIGA contends that Travelers kept plaintiff on full salary for several weeks after the accident until August 18, 1989 and that she remained on sick leave until September 15, 1989 when those benefits expired and her employment was terminated. After getting authorization from Dr. Seltzer to return to work, plaintiff stated that she notified the unemployment office that she was able and available to work. She remained on unemployment until those benefits expired.
Although the award for lost wages appears to reflect the equivalent of six weeks salary, the trial judge did not specify that the award covered the six weeks immediately following the accident. Considering the testimony of plaintiff and Dr. Seltzer, we cannot say that an award of $1,384.62 for lost wages was manifestly erroneous.
Accordingly, for the reasons stated above, the trial court judgment is affirmed.
AFFIRMED.

. The legal issue posed in this case was recently decided by our brethren of the Fifth Circuit. In Rey v. Guidry, 618 So.2d 425 (La.App. 5th Cir. 1993) the court concluded that because the plaintiff's claim was pending when the 1992 amendment became effective, UM coverage had to be exhausted first.

. Obviously documents filed in the record after trial have no foundation as to authenticity nor are they subject to cross-examination by opposing counsel.