STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY SERVICES IN THE INTEREST OF E. R. AND O. R.

VERSUS

KIRK REDMANN

NO. 19-CA-146

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE JEFFERSON PARISH JUVENILE COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 06-NS-49, DIVISION "C"
HONORABLE BARRON C. BURMASTER, JUDGE PRESIDING

January 22, 2020

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, Stephen J. Windhorst, Hans J. Liljeberg, and John J. Molaison, Jr.

**AFFIRMED IN PART;**
**REVERSED IN PART;**
**AMENDED IN PART;**
**RENDERED**
 **JJM**
 **SMC**
 **SJW**
 **HJL**

**DISSENTS WITH REASONS**
 **JGG**

COUNSEL FOR PLAINTIFF/APPELLANT,
STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY
SERVICES IN THE INTEREST OF E. R. AND O. R.
     Honorable Paul D. Connick, Jr.
     Timothy P. O'Rourke

COUNSEL FOR DEFENDANT/APPELLEE,
KIRK REDMANN
     Michael A. Rosenblatt

**MOLAISON, J.**

In this case, the State of Louisiana, Department of Social Services, through the Jefferson Parish District Attorney appeals the juvenile court judgment finding that Kirk Redmann has a credit of $6,216.14 and that a penalty provision in the 2002 consent judgment between Kirk Redmann and Helen Meyer Redmann is no longer in effect. For the following reasons, we reverse in part, amend in part, and render.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal to this Court by these parties, Helen Meyer Redmann ("Helen") and Kirk Redmann ("Kirk").[1] According to the record before us, the parties agreed on a support award by Kirk in favor of Helen in which Kirk would pay 54% of specified expenses of the children, including premiums for their health insurance coverage.[2] [3]

On January 12, 2006, the State of Louisiana, Department of Child and Family Services, through the District Attorney for the Parish of Jefferson ("DCFS"), began providing child support enforcement services to Helen at her request. At that point in 2006, jurisdiction over enforcement of the child support award was transferred from the Twenty-Fourth Judicial District Court to the Jefferson Parish Juvenile Court.

Subsequently, on April 1, 2015, Kirk filed a motion seeking, among other things, a credit against Helen for her proportionate share of premiums for the

---

[1] For the first appeal, see *State, Dep't of Children and Family Services v. Redmann*, 17-50 (La. App. 5 Cir. 10/25/17), 231 So.3d 897.

[2] The law is clear that evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. *Denoux v. Vessel Mgmt. Services, Inc.*, 07-2143 (La. 5/21/08), 983 So.2d 84, 88; *Holley v. Holley*, 17-325 (La. App. 5 Cir. 11/20/17), 232 So.3d 717, 727-28. Although a document entitled "Consent Judgment" is located in this record, it was not properly offered and accepted by the trial judge into evidence at a hearing, and thus, it is not part of the record before this Court on appeal.

[3] According to the record, by April 6, 2018, the parties' children have both been emancipated and no longer rely upon their parents for financial support.

19-CA-146                                    1

children's health insurance coverage. In his motion, Kirk maintained that he had paid 100% of the children's health insurance premiums from September of 2007 through May 30, 2015, and pursuant to the original consent judgment, Helen owed him a credit of 46% of the children's health insurance premiums for that time period.[4] After four hearings, the trial judge found that "Kirk's share of the expenses owed was $1,345, minus a $250 credit for each child, resulting in $845 owed to Helen." *State, Dep't of Children and Family Services v. Redmann*, 231 So.3d at 900. However, upon review, this Court found that, "[b]ased on the record before us, it is unclear what documents, if any, were actually admitted into evidence. Thus, it is impossible for us to ascertain from the record before us how the trial court reached its determination that Kirk owed Helen $1,345 and for what. Accordingly, we find it necessary to vacate that portion of the December 28, 2015 judgment and remand the matter for a new hearing." *Id.* at 902.

On remand from this Court, the parties appeared for an April 6, 2018 hearing on Kirk's claim for reimbursement against Helen for health insurance premiums. At that hearing, Kirk testified that his children were covered on his second ex-wife Terri Redmann's health insurance policy from September of 2007 through November of 2010.[5] He introduced an email from Terri stating that the cost of his children's health insurance coverage was $165.00 per month. Kirk testified that he paid his "then spouse" Terri $165.00 per month from September of 2007 until September of 2010 for the premiums on his children's health insurance coverage. He also introduced fifteen cancelled checks to substantiate those payments.

At trial, DCFS objected to Kirk's documentation. In particular, DCFS questioned Kirk regarding the "actual breakdown of the cost of insurance" from

---

[4] At trial on April 6, 2018, the parties stipulated that, pursuant to the 2002 consent judgment, Helen was responsible for 46% of the children's specified expenses.
[5] Kirk admitted that he was also covered under Terri's medical insurance policy at the time. The cost of Kirk's coverage under Terri's medical insurance policy was not included in the $165.00 per month payments made by Kirk to Terri at issue herein.

19-CA-146                                     2

the insurance provider, which Kirk admitted that he did not know. Kirk also admitted that he did not have documentation from the insurance provider of the actual cost of his children's health insurance premiums from September of 2007 through November of 2010.[6]

At the close of the hearing, with respect to premiums for the children's health insurance coverage paid by Kirk from September of 2007 through November of 2010, the trial judge found as follows:

> Okay. So that's the end of what he needs to be reimbursed for. Okay. With regard to Mr. Redmann's claims, for the 165 a month for four months in 2007 through the 2010 which went through, I believe, September of 2010 because then it went up higher in October and November, the 165 a month, I am going to find that he did pay that insurance amount. He wrote checks to his ex-wife for that amount. There's some question about whether it should have been $30 a month or 165 a month, to me that comes down to whether Terri Redmann was overcharging him. That might be a fraud issue, but that doesn't – he paid it. I believe he paid it. I believe he paid it thinking it was for the children's insurance. If they somehow got ripped off, they both have a claim against Ms. Redmann at that point. But I do believe that the 165 a month should be the amount for those months. And then the last two months, October and November, he did pay the 232.50. I think his check stubs and what he did and his testimony is, indeed, that he did pay those amounts.

On appeal, DCFS raises three assignments of errors: first, as a matter of law, the trial court erred in interpreting insurance costs to mean the amounts the non-custodial parent paid to his "then spouse" Terri Redmann who maintained a health insurance policy through her employer, rather than the actual cost to the insured of the health insurance premiums for the minor children; second, the trial court erred in admitting and considering Terri's email to Kirk alleging the unsubstantiated cost of medical insurance over the objections of DCFS and Helen when Terri was not present to be cross-examined; and third, the trial court erred in refusing to consider

---

[6] At the hearing, Kirk also testified regarding his payment of his children's health insurance premiums from December of 2010 through May 30, 2015. He testified that his children's health insurance premiums were directly deducted from his paychecks during that time. He produced paycheck stubs evidencing deductions totaling $14,063.76. When questioned, Kirk testified that his employer paid his health insurance premium as a benefit of his employment so his payments were 100% for his children's health insurance premiums. DCFS did not object to this evidence. Kirk's payment of his children's health insurance premiums from December of 2010 through May 30, 2015 are not at issue herein.

the custodial parent's claim for penalties for delinquent payments as outlined in an August 26, 2003 consent judgment.

## LAW AND ANALYSIS

*Standard of Review*

In *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So.2d 731, 735, the Louisiana Supreme Court enunciated the standard of review in custody proceedings:

> It is well-settled that a court of appeal may not set aside a trial court's … finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.' *Rosell v. Esco*, 549 So. 2d 840, 844 (La. 1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742, 747, *rev'd in part, on other grounds*, 96-3028 (La. 7/1/97); 696 So. 2d 569, *reh'g denied*, 96-3028 (La. 9/19/97), 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La. 1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha*, 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*. *Lasha*, 625 So.2d at 1006.

Thus, where one or more trial court legal errors interdict the fact-finding process, this Court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Evans, supra*. Because our review of this record reveals that the trial court committed legal error, we have made our own *de novo* review of the record.

*Reimbursement*

In their first and second assignments of error, DCFS argues that the trial court erred in giving Kirk a credit of $6,216.14 because the trial judge relied on an

erroneous interpretation of the legal definition of "health insurance premium" as defined in La. R.S. 9:315(C)(4). We agree.

First, the question is whether Kirk can seek reimbursement. According to La. R.S. 9:315.8(D), "The party without legal custody or nondomiciliary party shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party, minus any court-ordered direct payments made on behalf of the child for work-related net child care costs, health insurance premiums, extraordinary medical expenses, or extraordinary expenses provided as adjustments to the schedule." Accordingly, Kirk might be entitled to a credit for the cost of health insurance premiums incurred on behalf of his minor children. *See Durfee v. Durfee*, 44,281 (La. App. 2 Cir. 5/13/09), 12 So.3d 984, 990.

Finding that Kirk is a party that could be entitled to reimbursement, we look next to whether he supported his claim. Pursuant to the provisions of La. R.S. 9:315(C)(4), which provides the definitions for the child support guideline statutes:

> 'Health insurance premiums' means the *actual amount paid by a party for providing health insurance on behalf of the child*. It does not include any amount paid by an employer or any amounts paid for coverage of any other persons. If more than one dependent is covered by health insurance which is paid through a lump-sum dependent-coverage premium, and not all of such dependents are the subject of the guidelines calculation, the cost of the coverage shall be prorated among the dependents covered before being applied to the guidelines. (Emphasis added.)

Words and phrases must be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. The interpretation of any statutory provision starts with the language of the statute itself. *In re Succession of Faget,* 10-188 (La. 11/30/10), 53 So.3d 414, 420. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the

language used. La. C.C. art. 9; La. R.S. 1:4; *In re Clegg,* 10-323 (La. 7/6/10), 41 So.3d 1141, 1154. Words of art and technical terms must be given their technical meaning when the law involves a technical matter. La. C.C. art. 11.

Here, Kirk testified that he paid his second ex-wife for insurance coverage for his minor children from September 2007 until November 2010. Kirk provided an email[7] from his second ex-wife, in which she advised him that the children's medical insurance cost $165.00 per month. Kirk did not call his second ex-wife to verify that amount. Kirk did not provide any documentation from his second ex-wife's insurance provider of the breakdown of that cost.

In *State v. Reed,*[8] Dr. Reed, who was being pursued in two separate child support matters regarding seven minor children, argued that the court erred in failing to give him credit for health insurance premiums of $501.00 per month he paid for four *other* minor children *not* the subject of the support orders. Our brethren on the Second Circuit held, however, that "there is no evidence before us which demonstrates a break-down of the amounts paid to the insurance company for Reed, his present wife, or his four children of this marriage, [so] Reed has failed to demonstrate his entitlement to the claimed credit."

In the instant case, the trial judge determined at the December 10, 2019 hearing that the total amount of expenses at issue for the children was $20,146.36. While we affirm the determination that Kirk was entitled to reimbursement, we find that Kirk did not prove "the actual amount paid by *a party* for providing health insurance on behalf of the children" as defined in La. R.S. 9:315(C)(4). Because Kirk did not prove the actual amount that he, as the party, paid for health insurance

---

[7] Here, this email is hearsay. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C); *Larios v. Martinez*, 17-514 (La. App. 5 Cir. 2/21/18), 239 So.3d 1041, 1045. Hearsay is not admissible except as otherwise provided by this Code or other legislation. La. C.E. art. 802.
[8] 26,896 (La. App. 2 Cir. 6/21/95, 7-8), 658 So.2d 774, 778, *abrogated on other grounds by Stogner v. Stogner*, 98-3044 (La. 7/7/99), 739 So.2d 762.

for his children from September 2007 until November 2010, we find that the trial judge erred in allowing a reimbursement credit of $6,570.00 for that time period. Accordingly, we reverse the portion of the trial court's judgment granting Kirk a credit for $6,570.00, and amend the award to reduce the credit to $13,576.36 from $20,146.36. Pursuant to the record before us, we also render the judgment, which is $6,245.13, owed by Helen to Kirk for 46% of the health insurance premiums paid from 2011 through 2015.[9]

*Penalties*

In their third assignment of error, DCFS argues that the trial judge erred in refusing to consider the custodial parent's claim for penalties for delinquent payments as outlined in their consent judgment of August 26, 2003. We note, however, that the 2003 Consent Judgment in question is not a part of the appellate record before this Court. As we have cautioned the parties in this matter before in this Court:

> Evidence must be properly and officially introduced and accepted into evidence during a hearing before being considered by the trial court in deciding the merits of a case. *See Touzet v. Mobley*, 612 So.2d 890, 893 (La. App. 5th Cir. 1993), *writ denied*, 614 So.2d 1263 (La. 1993). Courts of appeal are courts of trial record. This means, for purposes of our review, the record consists of the testimony, exhibits and other evidence **introduced during trial**. *Lewis v. Borne*, 625 So.2d 273, 275 (La. App. 4th Cir. 1993). (Emphasis in original.)

*State, Dep't of Children & Family Servs. v. Redmann*, *supra*.

Because the judgment is not in the record before us, we cannot consider whether the penalty portions of that judgment are still applicable to Kirk. Accordingly, we pretermit any discussion of this assignment of error.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's ruling that determined Kirk was entitled to reimbursement. We reverse the portion of trial court's

---

[9] At trial on April 6, 2018, the parties stipulated that, pursuant to the 2002 consent judgment, Helen was 46% responsible for the children's expenses.

judgment that gave Kirk a credit of $6,216.14, and amend the award to reduce

Kirk's credit to $13,576.36 from the prior amount of $20,146.36.  Pursuant to the

record before us, we also render judgment for $6,245.13, owed by Helen to Kirk

for 46% of the health insurance premiums paid from 2011 through 2015.

**<u>AFFIRMED IN PART;</u>**
**<u>REVERSED IN PART;</u>**
**<u>AMENDED IN PART;</u>**
**<u>RENDERED</u>**

| STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY SERVICES IN THE INTEREST OF E. R. AND O. R. | NO. 19-CA-146 |
|---|---|
| | FIFTH CIRCUIT |
| VERSUS | COURT OF APPEAL |
| | STATE OF LOUISIANA |
| KIRK REDMANN | |

## GRAVOIS, J., DISSENTS WITH REASONS

For the following reasons, I respectfully dissent from the majority's opinion to reverse the portion of trial court's judgment that gave Kirk Redmann a credit of $6,216.14, to amend the award to reduce Kirk's credit to $13,576.36 from the prior amount of $20,146.36, and to render judgment for $6,245.13, owed by Helen Redmann to Kirk for 46% of the health insurance premiums paid from 2011 through 2015. Rather, I would affirm the trial court's judgment in full.

## DISCUSSION

*Standard of Review*

Findings of fact will not be disturbed on appeal unless manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). "When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.*; *State, Dep't of Soc. Servs. ex rel. D.F. v. L.T.*, 05-1965 (La. 7/6/06), 934 So.2d 687, 690.

*Reimbursement*

In its first and second assignments of error, DCFS has not challenged the formula used by the trial court in determining the ultimate amount of credit Kirk would be entitled to receive. Rather, DCFS only questions whether the trial court properly gave Kirk credit for payment of the premiums for the children's health insurance coverage in the amount of $165.00 per month (claiming instead that he should have received a credit for said expense in the amount of only approximately $30.00 per month). In particular, in these assignments, DCFS argues that the trial court erred, as a matter of law, in giving Kirk a credit of $6,216.14 because the court relied on an erroneous interpretation of the legal definition of "health insurance premium" as defined in La. R.S. 9:315(C)(4). For the following reasons, I respectfully disagree with DCFS's arguments and the findings of the majority on this issue.

Pursuant to the provisions of La. R.S. 9:315(C)(4), "health insurance premiums" are defined as follows for purposes of the child support guideline statutes:

> "Health insurance premiums" means *the actual amount paid by a party for providing health insurance on behalf of the child*. It does not include any amount paid by an employer or any amounts paid for coverage of any other persons. If more than one dependent is covered by health insurance which is paid through a lump-sum dependent-coverage premium, and not all of such dependents are the subject of the guidelines calculation, the cost of the coverage shall be prorated among the dependents covered before being applied to the guidelines.

(Emphasis added.)

Importantly, the method and nature of proof required to prove "*the actual amount paid by a party for providing health insurance on behalf of the child*" is not specifically provided for in this statute.

First, I agree with the majority's finding that Kirk is considered "a party" under La. R.S. 9:315(C)(4) who could be entitled to reimbursement, upon his presenting adequate admissible proof thereof. I respectfully disagree, however,

with the majority's finding that Kirk did not submit sufficient proof of the actual amount he paid for providing health insurance on behalf of his children.

The burden of proving a credit against a potential child support payment arrearage is on the party asserting entitlement to the credit. *Waites v. Waites*, 17-499 (La. App. 4 Cir. 10/10/18), 256 So.3d 539, 547. *See also Brouillette v. Nat'l Remodelers & Rebuilders, Inc.*, 239 So.2d 375, 379 (La. App. 4th Cir. 1970) (observing that "the burden of proving offsets claimed, an affirmative defense, is upon the party asserting such offsets"). As found by the majority, there is no question that Kirk bore the burden of asserting his entitlement to a credit. However, the question of whether Kirk paid the health insurance premiums in question is ultimately one of credibility. *See Singleton v. Singleton*, 423 So.2d 791, 794 (La. App. 4th Cir. 1982), *writ denied*, 427 So.2d 1210 (La. 1983).

At the hearing on his claim for reimbursement, Kirk testified that he paid $165.00 per month to his then wife Terri as reimbursement to her for the amount she indicated to him was the cost of *his minor children's* health insurance coverage from September of 2007 until November of 2010, and provided substantiation thereof through copies of cancelled checks that were offered and accepted into evidence. There is no dispute that Kirk and his then wife Terri actually provided health insurance coverage for Kirk's minor children from September of 2007 through November of 2010. After hearing both parties testify, the trial judge chose to believe Kirk's testimony on this issue. In my opinion, DCFS has not shown either that there was either an error of law in the trial court's finding on this issue, or that the trial judge's finding of fact was manifestly erroneous or clearly wrong. *Rosell v. ESCO*, *supra*.

Although I agree with DCFS's argument and the majority's finding that the email from Terri to Kirk was inadmissible hearsay (and correspondingly, the trial court erred in admitting said email into evidence), in my opinion, Kirk presented

adequate admissible evidence of his right to reimbursement for health insurance premium payments made on behalf of his minor children, namely his testimony and copies of cancelled checks, that was properly considered and deemed credible by the trial court to prove that he paid the health insurance premiums in question. The trial court was able to examine the documentation and hear Kirk testify. Based on the record before us, in my opinion, the trial court did not abuse its broad discretion in accepting Kirk's evidence as proof of health insurance premium payments made on behalf of his minor children. *See Chauvin v. Chauvin*, 46,365 (La. App. 2 Cir. 6/22/11, 69 So.3d 1192, 1200. Moreover, as the trial court possesses wide discretion in assessing the probative value of evidence, *Id.* at 1199, I would find that the trial court's admission of the email in question to be harmless error.

Accordingly, in my opinion, these assignments of error asserted by DCFS are without merit. I would accordingly affirm the trial court judgment under review in full.

<u>**CONCLUSION**</u>

For the foregoing reasons, I would affirm the trial court judgment under review.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JANUARY 22, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 19-CA-146

## E-NOTIFIED

JUVENILE COURT (CLERK)
HON. BARRON C. BURMASTER (DISTRICT JUDGE)
JODY J. FORTUNATO (APPELLANT)          BERNADETTE R. LEE (APPELLEE)          MICHAEL A. ROSENBLATT (APPELLEE)
TIMOTHY P. O'ROURKE (APPELLANT)        SHEILA H. WILLIS (APPELLEE)

## MAILED

EDITH H. MORRIS (APPELLEE)             HONORABLE PAUL D. CONNICK, JR.
SUZANNE ECUYER BAYLE (APPELLEE)        (APPELLANT)
ATTORNEYS AT LAW                       DISTRICT ATTORNEY
1515 POYDRAS STREET                    TWENTY-FOURTH JUDICIAL DISTRICT
SUITE 1420                             200 DERBIGNY STREET
NEW ORLEANS, LA 70112                  GRETNA, LA 70053